**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**ACADIA INSURANCE COMPANY**                                                    **PLAINTIFF**

**v.**                                                          **CAUSE NO. 3:12-CV-188-CWR-LRA**

**HINDS COUNTY SCHOOL DISTRICT,**                                               **DEFENDANTS**
**ET AL.**

**ORDER**

Before the Court is Acadia Insurance Company's motion for summary judgment. Docket No. 14.[1] Hinds County School District has responded, Docket No. 36, Acadia has replied, Docket No. 44, and the matter is ready for review. The Court heard argument on the motion and ruled from the bench, promising a subsequent written ruling. This is that ruling.[2]

**I.    Factual and Procedural History**

This dispute concerns whether Acadia Insurance Company is obliged to defend and indemnify its insured, Hinds County School District, in another proceeding brought against the School District. As such, the factual and procedural history begins with the underlying litigation.

In June 2010, Bryant and Johnna Coward sued the School District and two of its officials on behalf of their minor daughter M.L.C., a student in the School District. Docket No. 1-3. The Cowards alleged that M.L.C. had been battered and verbally abused by a teacher, causing physical injury and emotional distress, and that School District officials knew of similar activity by that teacher but failed to stop it. *Id.* at 3. The Cowards filed their suit in the Circuit Court of Hinds County, Mississippi. *Id.* at 1. Acadia provided a defense under a reservation of rights. Docket No. 15, at 2-3.

In March 2012, Acadia filed this action in this Court seeking a declaration that it did not have to continue to defend or indemnify the School District in the underlying litigation. Docket No. 1. This was the first federal action relating to the Cowards' claims.

---

[1] Although this case has been consolidated with two others, all citations are to its own docket, except where indicated.

[2] Also before the Court is Acadia's motion for leave to exceed the page limit by nine pages. Docket No. 45. The motion is granted.

In May 2012, another insurance company with an interest in the underlying litigation removed a related dispute to this Court. *See* Docket No. 1, in Cause No. 3:12-cv-332. That was the second federal action relating to the Cowards' claims.

The Cowards subsequently amended their state court complaint to seek relief under 42 U.S.C. § 1983 and other federal civil rights statutes. With federal question jurisdiction established, their case was removed here in October 2012. *See* Docket No. 1, in Cause No. 3:12-cv-731. That was the third federal action involving the Cowards' claims. Although their claims now lie in this Court rather than state court, they will still be referred to as the "underlying litigation."

In January 2013, all three actions were consolidated into this cause number, No. 3:12-cv-188. Docket No. 30. This is the lead case and will receive all future filings. *Id.* at 2.

## II. Present Arguments

Acadia presents three reasons why it owes the School District no further defense or indemnity. It first claims the Cowards have no evidence that M.L.C. suffered bodily injury. Docket No. 15, at 4-6. Even assuming they did, it argues that the events which allegedly harmed M.L.C. did not constitute an "occurrence" because they were intentional, not accidental. *Id.* at 6-13. Finally, it says two policy exclusions preclude coverage: the exclusion for injuries that are expected or intended, and the exclusion for abuse or molestation. *Id.* at 13-17.

The School District responds that allegations that the teacher hit M.L.C. and dropped M.L.C. from her wheelchair state a claim for bodily injury sufficient to trigger coverage.[3] Docket No. 36, at 16-19. It adds that an endorsement for corporal punishment confirms coverage in spite of Acadia's invoked exclusions. *Id.* at 14-16. Finally, the School District contends that Acadia should be estopped from denying coverage because Acadia acted in bad faith during a June 2012 mediation. *Id.* at 19-22.

## III. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute

---

[3] At the hearing, much of the School District's argument centered on the sufficiency of the allegations in the Cowards' complaint. As Acadia correctly observed, though, the present motion is one for summary judgment, which forces the Court to consider the state of the evidence attached to the motion and the School District's response. Moreover, in its response, the School District never argued that it needed more time for discovery, and the underlying plaintiffs never responded at all, even though they received a modest extension of time to file a response, ostensibly to put forward evidence supporting coverage.

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

## IV. Discussion

### A. Substantive Law

In Mississippi, an insurer's duty to defend is determined by comparing the conduct alleged in the complaint with the terms of the insurance policy. *Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). "[W]here, through independent investigation, an insurer becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense *until* it appears that the facts upon which liability is predicated fall outside the policy's coverage." *Id.* (citation omitted and emphasis added).

"[T]he obligation to defend is a contractual right as set out in the policy, separate and distinct from the issue of coverage." *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009) (citation omitted).

It is well-established that "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Id.* (quotation marks and citation omitted).

### B. Underlying Allegations

The Cowards' amended complaint stated that School District teacher Louise Miley Johnston physically and emotionally abused 13-year-old M.L.C between spring 2008 and spring 2009.[4] Docket No. 1-1, at 38-54, in No. 3:12-cv-731. Specifically, Johnston allegedly "sprayed M.L.C. in the face with a can of Aerosol spray"; "dropped M.L.C."; "called M.L.C. a 'bitch,' threw a ball at M.L.C. hitting her in the face (M.L.C. is confined to a wheelchair and doesn't have the use of her arms)"; and "grabbed M.L.C.'s face and told her, 'I hate you, you make me sick.'" *Id.* at 40. The complaint further alleged that the Superintendent, the Principal, and other School District employees

---

[4] This is the most recent complaint; it was filed in state court on October 10, 2012.

knew or should have known of Johnston's abusive acts but failed to intervene. *Id.*

The Cowards' specific causes of action were conspiracy, breach of fiduciary duty, intentional or negligent infliction of emotional distress, negligence, negligent supervision, negligent assignment, negligent hiring, negligent retention, negligent misrepresentation, and violations of 42 U.S.C. §§ 1983 (based upon M.L.C.'s substantive due process right to bodily integrity), 1985, 1986, and 1988. *Id.* at 44-53. Their claims were brought against the School District, Gary Road Intermediate School, Superintendent Stephen L. Handley (in his official and individual capacities), Principal Kimberly Davenport (in her official and individual capacities), and a number of John Does. *Id.* at 39. M.L.C.'s teacher was not named as a defendant. *Id.*

### C. Analysis

None of the School District's arguments in opposition to summary judgment are persuasive, since (1) the evidence of bodily injury is lacking; (2) the underlying complaint did not mention corporal punishment, nor is there evidence of corporal punishment; and (3) the School District cannot plausibly advance a bad faith claim based entirely on one unproductive mediation.

#### 1. Bodily Injury

While the plaintiffs certainly alleged in their complaint that M.L.C. had suffered a variety of bodily injuries, at present there is scant evidence supporting that claim, at least in our record. The evidence shows only that M.L.C. twice fell out of – or was dropped from – her wheelchair. Docket No. 14-4, at 6-7 (plaintiffs' responses to Acadia's interrogatories). But the specific injuries those falls caused are described as "unquantifiable." *Id.* at 8. There is no evidence about treatment by doctors for physical injuries or any physical limitations M.L.C. will suffer from the alleged abuse. *See id.* at 8-9. Nor is there evidence in our record about the ball hitting M.L.C.'s face, the aerosol spray, or the grabbing of M.L.C.'s face. Any physical injuries she suffered must be inferred from the fact that she fell to the ground, and even then they appear to be *de minimis*.

Because this case involves abuse of a minor child with a disability, it is appealing to say that her physical injuries are so obvious that they speak for themself. At the summary judgment stage, though, that is not enough. Nevertheless, the undersigned will proceed with the analysis to show that Acadia's remaining arguments also are meritorious.

#### 2. Accidental Versus Intentional Acts

Acadia's next argument is that there was no "occurrence" triggering coverage because the

teacher and the defendants' actions were alleged to be intentional, not accidental. Docket No. 15, at 6-13; *see, e.g.*, *Audubon Ins. Co. v. Stefancik*, 98 F. Supp. 2d 751, 756 (S.D. Miss. 1999) (granting insurer summary judgment on this basis in a civil conspiracy and breach of fiduciary duty case). Acadia also cites Fifth Circuit case law holding that there is no insurance coverage for supervisory negligence when the underling's acts were intentional. Docket No. 15, at 11-12.

The School District responds that there is coverage for the teacher's "accidental" dropping of M.L.C. from her wheelchair. Docket No. 36, at 16-19. It adds that an endorsement for corporal punishment overrides the exclusion for intentional acts. *Id.* at 14, 16.

The School District's negligence argument is unpersuasive. The amended complaint does not allege that the teacher was negligent; its allegation that the teacher dropped M.L.C. was part and parcel of a pattern of *abuse*, which is intentional conduct. More importantly, there is no evidence that the drop was the product of negligence. *See* Docket No. 36-5 (statement of physical therapist regarding the teacher's inappropriate transfer resulting in M.L.C.'s "drop"). This was the moment when such evidence could have been presented. The School District's argument that such evidence could be adduced at trial is insufficient to avoid summary judgment. *See* Fed. R. Civ. P. 56(c)(1).

The School District's other response, regarding the corporal punishment endorsement, will be addressed below.

### 3.     Exclusions and Endorsements

Recall that Acadia invoked two policy exclusions: the expected or intended injury exclusion, and the abuse or molestation exclusion. The School District responded that these were superseded by the corporal punishment endorsement.

As the Court suggested at the hearing, that is a stretch. The underlying complaint never alleged that the teacher's actions constituted corporal punishment. As Acadia asked in its brief, "what was M.L.C. being punished for?" Docket No. 44, at 2. The teacher was not disciplining M.L.C. and M.L.C.'s injuries, if any, do not appear to have been suffered in the course and scope of the teacher's duties. Further, although the School District argued at the hearing that corporal punishment defenses usually arise in response to abuse claims, such that corporal punishment would not necessarily have been alleged in the complaint, the School District has pointed to no evidence that the teacher's actions constituted corporal punishment. The endorsement is unavailing here.

We therefore return to the exclusions. Setting aside the expected or intended injury

exclusion, Acadia is correct that the abuse or mistreatment exclusion applies to this case. That exclusion reads as follows:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
> 2. The negligent:
>    a. Employment;
>    b. Investigation;
>    c. Supervision;
>    d. Reporting to the proper authorities, or failure to do report; or
>    e. Retention;
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

Docket No. 14-3, at 57.

The Cowards' complaint obviously describes the teacher's actions as abuse. *See infra.* And their discovery responses repeatedly characterize the teacher's acts as "abuse" or "mistreatment." *E.g.*, Docket No. 14-4, at 2 (mentioning "abuse" seven times on that page alone). The exclusion means the policy does not cover abuse. *See Lincoln County Sch. Dist. v. Doe*, 749 So. 2d 943, 944 (Miss. 1999) (rendering judgment in insurer's favor based upon nearly-identical abuse or molestation exclusion).

Similarly, the verbiage excluding coverage for negligent supervision and retention maps onto the Cowards' allegations against the Superintendent and the Principal. That means there is no insurance coverage for those claims.

### 4. Estoppel

The School District's final argument is that Acadia's coverage adjuster's control over the funds available for a settlement offer, if any, in one mediation means Acadia has violated *Moeller* counsel's independence, is liable to the School District for bad faith denial of insurance benefits and breach of the duty of good faith and fair dealing, and therefore should be estopped from denying coverage.[5] *See Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1064 (Miss. 1996).

---

[5] In this case, *Moeller* counsel is the Adams & Reese law firm, the same firm that represents the Hinds County School Board.

The School District has repeatedly advanced this theory. In June 2012, it sought leave to amend its answer and add a bad faith counter-claim, in lieu of responding to the pending motion for summary judgment.[6] Docket No. 17. That motion was denied in a Text Order on January 25, 2013, so that briefing on summary judgment could proceed. Now, the School District argues that the Court's denial was a manifest injustice under Rule 59(e). Docket No. 37, at 4-5. It has filed a new motion "for leave to file a consolidated supplemental responsive pleading," in which it again seeks permission to file bad faith claims against Acadia *and* the insurance company involved in the second declaratory action. *Id.*

The School District's bad faith theory is flawed. Even assuming the truth of its allegations, it is difficult to see how Acadia's actions in one mediation mean it is liable for bad faith denial of insurance benefits or breach of the duty of good faith and fair dealing. Acadia did not interfere with the School District's independent defense. It has paid for Adams and Reese since the beginning of these proceedings, in full. It merely said that in the mediation, money for a settlement would come from the coverage side. But Acadia was not required to put up money to settle a suit it (correctly) believed it was not obliged to cover.[7]

Even assuming there was error at the mediation, two reasons suggest that the error was harmless. First, again, Acadia never interfered with the School District's defense on the merits; its insured has not been damaged.[8] Adams and Reese's motions for judgment on the pleadings and for qualified immunity, for example, have now been filed and fully briefed at Acadia's cost. Second, the parties could have conducted another mediation in an attempt to cure any perceived error. They chose not to.

Finally, the School District has not pointed to a single case where a failed mediation resulted in estoppel of an insurer's otherwise-valid motion for summary judgment and new liability for a bad faith claim. The School District's citations to general insurance law do not support its theory.

---

[6] With that one move, the School District secured seven additional months of defense costs from Acadia.

[7] For its part, when Acadia declined to put up new money for a settlement, it took on the risk that its motion for summary judgment would not be resolved for many months or would be denied, thereby causing it to incur many more bills from Adams and Reese.

[8] It is not enough to speculate that had Acadia put up settlement money at the mediation, that the offer would have been accepted by the underlying plaintiffs.

As a result, that part of the School District's motion seeking leave to file bad faith claims against Acadia is denied.

## V. Conclusion

Acadia's motion for summary judgment is granted.

**SO ORDERED**, this the 29th day of March, 2013.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE