IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ACADIA INSURANCE COMPANY                                    PLAINTIFF

v.                                                CAUSE NO. 3:12-CV-188-CWR-LRA

HINDS COUNTY SCHOOL DISTRICT,                              DEFENDANTS
ET AL.

## ORDER

Before the Court in this consolidated action are defendant Hinds County School District's motions for judgment on the pleadings and for qualified immunity. Docket Nos. 31, 33. The underlying plaintiffs have responded, Docket Nos. 56-58, the School District has replied, Docket Nos. 62-63, and the matter is ready for review. The motions will be granted in part and denied in part.

### I.      Factual and Procedural History

In June 2010, Bryant and Johnna Coward filed this suit against Hinds County School District and two of its officials on behalf of their minor daughter M.L.C., a student in the School District. Docket No. 1-3. The Cowards originally filed their complaint in Mississippi state court, but later amended it to seek relief under 42 U.S.C. § 1983 and other federal civil rights statutes. With federal question jurisdiction established, the case was removed here in October 2012. *See* Docket No. 1, in Cause No. 3:12-CV-731. It was then consolidated with two related declaratory actions already pending in this district. *See* Docket No. 30.

The Cowards' amended complaint claimed that School District teacher Louisa Miley Johnston physically and verbally abused 13-year-old M.L.C. between spring 2008 and spring 2009. Docket No. 1-1, at 38-54, in No. 3:12-CV-731. Johnston allegedly "sprayed M.L.C. in the face with a can of Aerosol spray"; "dropped M.L.C."; "called M.L.C. a 'bitch,' threw a ball at M.L.C. hitting her in the face (M.L.C. is confined to a wheelchair and doesn't have the use of her arms)"; and "grabbed M.L.C.'s face and told her, 'I hate you, you make me sick.'" *Id.* at 40. The complaint further alleged that the Superintendent, the Principal, and other School District employees knew or should have known of Johnston's abusive acts but failed to intervene. *Id.*

The Cowards' specific claims were conspiracy, breach of fiduciary duty, intentional or

negligent infliction of emotional distress, negligence, negligent supervision, negligent assignment, negligent hiring, negligent retention, negligent misrepresentation, and violations of 42 U.S.C. §§ 1983, 1985, 1986, and 1988. *Id.* at 44-53. These claims were brought against the School District, Gary Road Intermediate School, Superintendent Stephen L. Handley (in his official and individual capacities), Principal Kimberly Davenport (in her official and individual capacities), and a number of John Does. *Id.* at 39. M.L.C.'s teacher was not named as a defendant. *Id.*

## II.   Present Arguments

The School District's motion for judgment on the pleadings contends that all of the Cowards' causes of action fail to state a claim. Docket No. 32. It argues, among other things, that state law claims against the Superintendent and Principal in their individual capacities cannot be sustained under the Mississippi Tort Claims Act (MTCA); that the defendants constitute one legal entity that cannot conspire with itself; and that the School District owed the Cowards no fiduciary duty. *Id.* Alternatively, the School District claims that its officials are entitled to qualified immunity on the Cowards' federal causes of action. Docket No. 34.

The Cowards respond that the School District has waived the protections of the MTCA by waiting 32 months to seek judgment on those claims. Docket No. 56. "Defendants vigorously engaged in discovery, designated experts, and even mediated the state law claims" over that period, the plaintiffs contend. *Id.* at 10. The Cowards further argue that the School District "judicially acknowledged that the state law claims in the original complaint were valid" by not opposing their motion to amend to add federal causes of action. *Id.* at 11. Regarding § 1983 and their other federal theories of recovery, the Cowards respond that they have made out a valid claim for the individual defendants' violations of M.L.C.'s substantive due process right to bodily integrity sufficient to overcome qualified immunity, because the individual defendants allegedly knew that their subordinate physically abused M.L.C., yet were deliberately indifferent to that abuse. *Id.* at 11-15.

## III.   Legal Standards

### A.   Judgment on the Pleadings

The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations

in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citations omitted).

### B.      Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). "This immunity protects all but the plainly incompetent or those who knowingly violate the law, so we do not deny immunity unless existing precedent must have placed the statutory or constitutional question *beyond debate*." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quotation marks and citations omitted) (emphasis in original).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. To discharge this burden, a plaintiff must satisfy a two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quotation marks and citations omitted). At the dismissal stage, a court must first "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations omitted). The Court need not conduct the analysis in that order. *Id.* at 236.

## IV.    Discussion

### A.      The State Law Claims

In Mississippi, "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 180 (Miss. 2006). In that case, the defendants unreasonably and unjustifiably "delayed pursuing their right to compel arbitration for eight months," and actively participated in the litigation during that period. *Id.* at 181.

The Mississippi Supreme Court concluded that the defendants had waived their right to arbitration.[1] *Id.*

The Mississippi Supreme Court "considers MTCA immunity as an affirmative defense." *Estate of Grimes v. Warrington*, 982 So. 2d 365, 370 (Miss. 2008) (citations omitted). In *Warrington*, a physician "asserted his [MTCA] affirmative defense in his answer, but rather than filing a motion to dismiss on this ground, he proceeded substantially to engage the litigation process by consenting to a scheduling order, participating in written discovery, and conducting depositions." *Id.* His five-year delay in moving for MTCA immunity was held to be unreasonable and waived his right to summary judgment on that basis. *Id.* at 371.

The Mississippi Supreme Court has stressed that the waiver analysis is fact-specific. In *Horton*, for example, it declined "to set a minimum number of days which will constitute unreasonable delay in every case, but rather we defer such findings for the trial court on a case by case basis." *Horton*, 926 So. 2d at 181. It relied on that discretion in *Kimball Glassco Residential Ctr., Inc. v. Shanks*, 64 So. 3d 941, 947 (Miss. 2011), when it found no waiver of an MTCA affirmative defense where "[a]lthough there was an approximately eleven-month delay in the case," the defendants "pursued their affirmative defense by informing [the plaintiff] of their intent to seek a hearing on the motion to dismiss," and responded to discovery because "they were required to do so by the Rules of Civil Procedure." *Id.*

Returning to our case, the School District has observed in its rebuttal that this Mississippi case law does not apply here, since federal courts apply *federal* procedure. The School District is correct. Because the above cases describe Mississippi procedure, not federal procedure, they are not applicable to these proceedings.[2]

Consider the proceedings in *Learmonth*. There, the Mississippi Supreme Court found a

---

[1]  The court instructed that "[t]o pursue an affirmative defense or other such rights, a party need only assert it in a pleading, bring it to the court's attention by motion, and request a hearing. Once a hearing is requested, any delay by the trial court in holding the hearing would not constitute a waiver." *Horton*, 926 So. 2d at 181 n.9.

[2]  That is fortunate for the School District, because under Mississippi procedure it is difficult to see how the School District would not have waived its MTCA immunity by delaying this motion for such a long time. *See Alexander v. Newton Cnty.*, No. 2012-CA-60-COA, 2013 WL 1731338, at *5 (Miss. Ct. App. Apr. 23, 2013) (finding MTCA immunity waived where "the County's two-year-and-four-month delay in pursuing its affirmative defense of MTCA immunity was unreasonable and unnecessary").

constitutional challenge to the statutory cap on noneconomic damages procedurally barred due to the parties' failure "to query the jury regarding the amount of noneconomic damages in a special interrogatory or special verdict." *Sears, Roebuck & Co. v. Learmonth*, 95 So. 3d 633, 639 (Miss. 2012). But the Fifth Circuit had no problem reaching the issue. It reasoned that "[a]lthough the Mississippi Supreme Court is privileged to make its own rules concerning the propriety of considering an issue on appeal, we are bound by federal procedural rules, including those governing issue preservation." *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 256 (5th Cir. 2013) (citations omitted). The Fifth Circuit then pointed out that the Mississippi Supreme Court has recognized that state-law affirmative defenses raised in federal court "should not be confused with the separate procedural issue of whether the defense is raised, preserved or should be barred, all of which are controlled by federal procedural law." *Huss v. Gayden*, 991 So. 2d 162, 165 (Miss. 2008).

The School District also has directed the Court to another decision from this district where the plaintiff made the same waiver argument as the Cowards. There, Judge Lee found that the "plaintiff's reliance on Mississippi case law on the subject of waiver is misplaced." *Bryant v. Wyeth, Inc.*, 816 F. Supp. 2d 329, 332 (S.D. Miss. 2011).

In any event, applying federal procedure to this case shows that the School District has not waived its MTCA immunity defense.

In federal court, as a general matter, a defendant has waived an affirmative defense when it does not plead the defense "in its first responsive pleading." *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000) (citation omitted); *see* Fed. R. Civ. P. 8(c)(1). That rule operates to give the plaintiff notice and an opportunity to respond to the defenses the defendant has asserted. *See Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 467 (5th Cir. 2001).

Even when a defendant fails to raise an affirmative defense in its first responsive pleading, that "technical failure to comply precisely with Rule 8(c) is not fatal" where the defense is later raised "in a manner that does not result in unfair surprise." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (quotation marks and citation omitted). "An affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Id.* (quotation marks, brackets, and citation omitted).

Here, the School District's MTCA affirmative defense was raised in its first responsive pleading in state court. Docket No. 57-3, at 3 (Answer and Affirmative Defenses). It was again

raised in the School District's first responsive pleading in federal court, after the complaint was amended. Docket No. 3, at 3, in No. 3:12-CV-731 (Answer and Affirmative Defenses). That was sufficient to preserve the affirmative defense.

Even assuming the School District had not pled MTCA immunity in its Answer, moreover, in light of our procedural posture it may have been entitled to amend that pleading to add that defense. As the parties discussed with the Court at a recent status conference, little discovery has been conducted even though this case is nearly three years old. Only one person has been deposed, for example, and that person is not a party. Given how far this case has yet to go, it would be difficult for the plaintiffs to successfully argue that the School District's invocation of the MTCA has resulted in unfair surprise or prejudiced them in some way. *See Cliburn v. Manufactured Home Ctr., Inc.*, No. 3:12-CV-238, 2012 WL 6738254, at *2-3 (S.D. Miss. Dec. 28, 2012) (finding no waiver of an affirmative defense not pled in the first responsive pleading because there was no evidence of prejudice and sufficient time before trial for the plaintiff to respond).

Nor do the Cowards' other waiver arguments – that the School District has waived its MTCA defense because it participated in mediation and did not oppose the motion to amend – have merit. The mediation agreement explicitly stated that parties did not waive their substantive rights by participating in the mediation. Docket No. 57-7, at 4. Further, in an email agreeing to amendment of the complaint, the School District's defense attorney expressly reserved his "rights to oppose the amended claims." Docket No. 62-1.

In sum, the School District has not waived its MTCA defense.

The Cowards have not briefed any substantive argument as to why their state law claims survive the motion for judgment on the pleadings. They have not explained, for example, how their breach of fiduciary duty theory states a claim or how their negligence allegations set forth a plausible right to recovery, which were two of the School District's challenges to those claims moving forward. With no other reason presented to defend the state law claims, their dismissal is appropriate.

The Cowards have also asked that the Court permit them to amend their complaint a second time instead of dismissing their claims. Docket No. 56, at 7. The request will be denied primarily because this was the moment to explain how the state law claims survived. Additionally, the Cowards have not explained how their complaint would be amended, much less provided a proposed

6

Second Amended Complaint for the parties to review. *See United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003) (affirming denial of motion for leave to amend where party seeking amendment did not "set[] forth with particularity the grounds for the amendment and the relief sought"). Further amendment is not warranted.

### B.    The Federal Claims

At the outset, the only federal claim the Cowards have defended is their § 1983 claim. Docket No. 56. They have not argued that any of their other federal theories of relief survive, such as their claim under 42 U.S.C. § 1985. *Id.* Accordingly, the non-1983 claims will be dismissed as abandoned. *See United States ex rel. Woods v. SouthernCare, Inc.*, No. 3:09-CV-313, 2013 WL 1339375, at *7 (S.D. Miss. March 30, 2013).

It also is worth noting that the Cowards' emphasis on the existing record evidence is not necessary, since in the § 1983 context, "discovery must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Winstead v. Box*, 419 F. App'x 468, 469 (5th Cir. 2011) (unpublished) (quotation marks and citations omitted). The focus instead is on the adequacy of the complaint in light of clearly established law.[3]

Regardless, the Cowards and the School District agree that "schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment."[4] *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (en banc).

In one leading case, the Fifth Circuit held that "in January 1985, a competent teacher knew or should have known that to tie a second-grade student to a chair for an entire school day and for a substantial portion of a second day, as an educational exercise, with no suggested justification, such as punishment or discipline, was constitutionally impermissible." *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987) (affirming district court's denial of qualified immunity at

---

[3]  We are in somewhat of an unusual situation because the parties engaged in limited discovery in state court, and some of that evidence was presented to this Court in connection with an earlier motion. *See* Docket No. 66, at 4 (Order granting Acadia Insurance Company's motion for summary judgment, in part owing to the state of the evidence regarding M.L.C.'s physical injuries). The undersigned will not consider any evidence at this juncture.

[4]  It is self-evident that a student's constitutional interest in *bodily* integrity does not extend to allegations of verbal abuse. As a result, the Court considers only the allegations of physical abuse.

the motion to dismiss stage). That is because "[a] young student who is not being properly punished or disciplined has a constitutional right not to be lashed to a chair through the school day and denied, among other things, the basic liberty of access to the bathroom when needed." *Id.*

In another case, that court held that "[n]o reasonable public school official in 1987 would have assumed that he could, with constitutional immunity, sexually molest a minor student." *Doe*, 15 F.3d at 155. Nor could supervisory school officials "reasonably believe, in 1987, that they could be deliberately indifferent to their subordinate's violation of a student's constitutional rights and escape supervisory liability under § 1983." *Id.* at 456. Considering the evidence in the summary judgment record in that case, the Fifth Circuit affirmed the denial of qualified immunity to the school principal, but granted the school superintendent qualified immunity. *Id.* at 456-58.

Here, the School District says it will assume, "solely for purposes of this motion," that the constitutional right to bodily integrity extends to cover the physical abuse allegedly suffered by M.L.C., and that such law was clearly established. Docket No. 34, at 11. What remains are the School District's contentions that the complaint fails to allege a pattern of physical abuse, fails to allege exactly how Superintendent Handley and Principal Davenport were put on notice of the physical abuse, and fails to allege how Superintendent Handley and Principal Davenport were deliberately indifferent to M.L.C.'s constitutional rights. *Id.* at 11-12; *see also id.* at 9 ("[T]he dispositive question is whether [plaintiffs] alleged facts that Handley and Davenport had notice of a pattern of unconstitutional acts and responded with deliberate indifference after such notice.").

According to the complaint, beginning in Spring 2008 and for about one year, M.L.C.'s teacher Louise Johnston physically abused M.L.C. Docket No. 1-1, at 40, in No. 3:12-CV-731. Johnston allegedly sprayed M.L.C. in the face with an aerosol spray, dropped M.L.C., threw a ball into M.L.C.'s face, and grabbed M.L.C.'s face. *Id.* That sufficiently describes a pattern of physical abuse.

The complaint further alleges that Superintendent Handley and Principal Davenport "knew or should have known of this ongoing activity and had opportunities to intervene and stop the abuse but failed to do so," demonstrating deliberate indifference. *Id.* It specifically names Principal Davenport as one who knew or should have known about Johnston's acts against *other* students prior to the abuse of M.L.C. *Id.* The complaint then proceeds to describe, in a section entitled "Notification," that "a school employee approached Defendant Davenport and asked her why M.L.C.

8

was being left in Ms. Johnston's care," only to have Davenport tell the employee to "mind [her] own business." *Id.* at 42. The supervisors were alleged to have failed to report any of these acts of abuse to appropriate authorities as required by state law. *Id.* at 43-44. The complaint articulated that "Defendants demonstrat[ed] deliberate indifference to M.L.C.'s constitutional rights by failing to take action that was obviously necessary to prevent or stop the abuse of M.L.C." *Id.* at 50.

Taken together, these allegations provide adequate detail to survive a motion for qualified immunity at this early stage. The complaint describes specific acts of physical abuse, occurring over a limited time period, perpetrated by one teacher, and permitted to continue by two supervisors in the direct chain of command. The supervisors were alleged with some specificity to have been put on notice of the unconstitutional acts before choosing not to intervene or tell the authorities, thereby failing to prevent further harm to M.L.C. Such a violation of state law would necessarily be objectively unreasonable. Based on these allegations, the Cowards have "nudged [their] claims . . . across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quotation marks and citation omitted).

It bears repeating that sufficiently stating a claim says nothing about a plaintiff's ability to succeed at summary judgment or at trial. That is especially true in the qualified immunity context. *See Morgan*, 659 F.3d at 384 n.108 ("[O]ur ruling today does not preclude a different result on summary judgment or at trial, after the parties have had an opportunity to develop the record through discovery."). But there is enough for this case to move forward on the Cowards' § 1983 claim.

**V.    Conclusion**

The motions are granted in part and denied in part. All of the underlying plaintiffs' state and federal claims are dismissed with the exception of the claim brought pursuant to 42 U.S.C. § 1983.

**SO ORDERED**, this the 20th day of May, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE