**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**ACADIA INSURANCE COMPANY**                                            **PLAINTIFF**

**v.**                                                          **CAUSE NO. 3:12-CV-188-CWR-LRA**

**HINDS COUNTY SCHOOL DISTRICT;**                          **DEFENDANTS**
**BRYANT AND JOHNNA COWARD,** *for*
*and on behalf of M.L.C., a minor*

*consolidated with*

**BRYANT AND JOHNNA COWARD,** *for*                          **PLAINTIFFS**
*and on behalf of M.L.C., a minor*

**v.**                                                          **CAUSE NO. 3:12-CV-332-CWR-LRA**

**HINDS COUNTY SCHOOL DISTRICT;**                          **DEFENDANTS**
**ACE AMERICAN INSURANCE**
**COMPANY**

*consolidated with*

**BRYANT AND JOHNNA COWARD,** *for*                          **PLAINTIFFS**
*and on behalf of M.L.C., a minor*

**v.**                                                          **CAUSE NO. 3:12-CV-731-CWR-LRA**

**HINDS COUNTY SCHOOL DISTRICT;**                          **DEFENDANTS**
**GARY ROAD INTERMEDIATE**
**SCHOOL; STEPHEN L. HANDLEY,**
*individually and in his official capacity as*
*Superintendent of Hinds County School*
*District***; KIMBERLY DAVENPORT,**
*individually and in her official capacity as*
*Principal of Gary Road Intermediate*
*School***; JOHN AND JANE DOES I-X**

## <u>ORDER</u>

Before the Court are ACE American Insurance Company's (AAIC) motion for summary

judgment, Hinds County School District's motion for declaratory judgment, and several related

motions. After reviewing the parties' arguments, the applicable law, and the insurance policy in question, AAIC's motion will be granted and the School District's motion will be denied.

**I.     Factual and Procedural History**

In June 2010, Bryant and Johnna Coward filed suit in state court against the School District and two of its officials on behalf of their minor daughter M.L.C., a student in the School District. After amending their complaint to add federal causes of action, the case was removed here in October 2012. It was then consolidated with two related declaratory actions already pending in this district.

The Cowards' amended complaint claimed that School District teacher Louisa Miley Johnston physically and verbally abused 13-year-old M.L.C. between spring 2008 and spring 2009. Johnston allegedly "sprayed M.L.C. in the face with a can of Aerosol spray"; "dropped M.L.C."; "called M.L.C. a 'bitch,' threw a ball at M.L.C. hitting her in the face (M.L.C. is confined to a wheelchair and doesn't have the use of her arms)"; and "grabbed M.L.C.'s face and told her, 'I hate you, you make me sick.'" The complaint further alleged that the Superintendent, the Principal, and other School District employees knew or should have known of Johnston's abusive acts but failed to intervene.

The Cowards' specific claims were conspiracy, breach of fiduciary duty, intentional or negligent infliction of emotional distress, negligence, negligent supervision, negligent assignment, negligent hiring, negligent retention, negligent misrepresentation, and violations of 42 U.S.C. §§ 1983, 1985, 1986, and 1988. These claims were brought against the School District, Gary Road Intermediate School, Superintendent Stephen L. Handley (in his official and individual capacities), Principal Kimberly Davenport (in her official and individual capacities), and a number of John Does. M.L.C.'s teacher was not named as a defendant.

In March 2013, this Court granted summary judgment to Acadia Insurance Company, finding that its policy did not cover the Cowards' claims.

In May 2013, this Court dismissed all of the Cowards' claims except their 42 U.S.C. § 1983 claim alleging a violation of M.L.C.'s substantive due process right to bodily integrity. The stay was then lifted for discovery to proceed on that claim.

The question now is whether AAIC has a duty under its insurance policy to defend the School District.

## II.      Present Arguments

AAIC contends that its policy does not cover the abuse at issue here, primarily because there is an exclusion for damages based upon bodily injury. The School District disagrees, pointing to language covering "Mental Distress arising out of a Wrongful Employment Practice," which includes a "violation of an individual's civil rights" relating to "negligent evaluation." It argues that because M.L.C. claims that the Superintendent and Principal's negligent evaluation of her teacher allowed that teacher to abuse her, thereby violating her civil rights and causing mental distress, that AAIC has a duty to defend it in this litigation.

## III.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

## IV.     Discussion

### A.      Substantive Law

In Mississippi, an insurer's duty to defend is determined by comparing the conduct alleged in the complaint with the terms of the insurance policy. *Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). "The duty to defend is broader than the duty to indemnify, and it arises if a complaint alleges facts which are arguably within the policy's coverage." *Miss. Farm Bureau Cas. Ins. Co. v. Amerisure Ins. Co.*, No. 3:11-CV-706, 2013 WL 286364, at *3 (S.D. Miss. Jan. 24, 2013) (quotation marks and citation omitted). "[R]egardless of whether a complaint's allegations ultimately prove to be meritorious, an insurance carrier has a contractual duty to furnish a legal defense whenever a lawsuit filed against an insured contains an allegation or claim which is covered under the policy." *Id.* (quotation marks and citation omitted). An insurance company, however, "clearly has no duty to defend a claim outside the coverage of the policy." *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).

"The interpretation of insurance policy language is a question of law." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998) (quotation marks and citation omitted). It is well-established

3

that "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009) (quotation marks and citation omitted).

"A policy must be considered as a whole, with all relevant clauses together." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010) (citation and emphasis omitted); *see also Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) ("In interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result."); *see, e.g.*, *New Hampshire Ins. Co. v. Robertson*, 352 So. 2d 1307, 1310 (Miss. 1977) (reading the insurance policy in context).

### B.    Relevant Policy Terms

The insurance policy in question excludes from coverage "Damages or Claims Expenses on account of any Claim":

C.    alleging, based upon, arising out of or attributable to any:

1.    Bodily Injury, other than Mental Distress arising out of a Wrongful Employment Practice. This also includes, but is not limited to, corporal punishment;
2.    Property Damage;
3.    Personal Injury, other than libel, slander or defamation in any form arising out of a Wrongful Employment Practice; or
4.    any allegations relating to the foregoing C.1, C.2 or C.3:
    a.    that an insured negligently employed, investigated, supervised or retained a person, or
    b.    based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such Damages, Claims Expenses or Claim.

This language constitutes "Exclusion C."[1]

The policy then defines "Wrongful Employment Practice" as "[a]ny actual or alleged:"

1.    wrongful dismissal, discharge or termination, whether actual or constructive;
2.    employment-related misrepresentation;

---

[1] Exclusion C does not apply to the policy's Educational Institution Crisis Management Coverage, but that is not relevant here.

4

3.      Discrimination;
4.      Sexual Harassment or unlawful workplace harassment;
5.      wrongful deprivation of a career opportunity;
6.      wrongful demotion;
7.      failure to employ or promote;
8.      wrongful discipline;
9.      Retaliation;
10.     negligent evaluation;
11.     employment-related libel, slander, defamation, humiliation, invasion of privacy;
12.     the giving of negative or defamatory statements in connection with an Employee reference;
13.     failure to grant tenure; and
14.     with respect to paragraphs QQ.1 through QQ.13 above, inclusive, negligent hiring, retention, training or supervision; infliction of emotional distress or mental anguish; failure to provide or enforce adequate or consistent corporate policies and procedures; or violation of an individual's civil rights;

of any past, present or prospective full-time, part-time, seasonal and temporary Employee or volunteer or leased Employee or applicant for employment of the Educational Institution. Coverage afforded by this Policy applies only to the extent that the Employee, volunteer or leased Employee or applicant for employment was acting:

a.      solely in their capacity as such,
b.      on behalf of the Educational Institution; and
c.      only to the extent the person was acting solely within the scope of their actual or proposed employment with the Educational Institution.

## C.      Analysis

The plain language of Exclusion C precludes coverage for most if not all of M.L.C.'s claims against the School District. It says there is no coverage for bodily injury (with one exception); corporal punishment; personal injury; or any negligent employment, investigation, or supervision related to bodily or personal injury. That bars coverage of M.L.C.'s causes of action based upon her physical injuries, as well as her theories of supervisory liability related to those injuries.

The policy does contain an exception covering "Mental Distress arising out of a Wrongful Employment Practice." The School District has sought to bring M.L.C.'s claims within that exception. Its reading of the policy, however, is not intuitive or reasonable.

As defined in the policy, "Wrongful Employment Practice" includes 13 enumerated practices

5

like wrongful termination; discrimination; retaliation; negligent evaluation; the giving of a negative letter of reference; failure to grant tenure; and, "with respect to" those 13 practices, "violation of an individual's civil rights."

The only item in wrongful practices 1-13 that the School District has latched onto is "negligent evaluation." It asserts that M.L.C. claims that the School District supervisors' negligent evaluation of her teacher led to her teacher's violation of her civil rights, causing mental distress.

One problem with that argument is that M.L.C. has not brought a claim for negligent *evaluation*. Her amended complaint brings claims for negligent supervision, assignment, hiring, and retention, but does not mention her teacher's evaluations. As a result, paragraph 14 is never reached. That is probably enough to bring the analysis to a close.

Continuing on, though, reveals further concerns with the School District's arguments. Assuming that paragraph 14 is reached, such that a "violation of an individual's civil rights" is covered, one then has to read the next paragraph. That paragraph says a wrongful employment practice is covered when the rights that are violated are "of any past, present or prospective full-time, part-time, seasonal and temporary Employee or volunteer or leased Employee or applicant for employment of the Educational Institution." That is inapplicable here because the allegations in our case do not involve the civil rights of an employee or job applicant.

Reading the definition of "Wrongful Employment Practice" in context and considering all its terms together, as this Court must under Mississippi law, the rights that have to be violated are an employee or job applicant's rights related to the employment relationship. Examples would include a teacher's race discrimination claim brought under Title VII of the Civil Rights Act of 1964, or a teacher's claim that a principal's negligent evaluation caused her harm. When the policy says it covers mental distress arising out of wrongful employment practices, the enumerated items and following paragraph show that the policy means the wrongful employment practices of management which harm subordinate employees or job applicants, not students.[2]

---

[2] The School District's new argument and evidence purportedly showing that AAIC advertised this policy as covering claims brought by non-employees cannot be considered, since "the reply memorandum is not the appropriate place to raise new arguments." *Johnson v. Wal-Mart Stores E., LP*, No. 3:12-CV-21, 2013 WL 395975, at *3 n.1 (S.D. Miss. Jan. 31, 2013) (quotation marks and citation omitted). It should have been introduced in response to AAIC's argument in its opening memorandum in support of summary judgment. *See* Docket No. 18, at 8, in Cause No. 3:12-CV-332. Even if that advertisement were considered, though, the plain language of the policy shows no coverage for the claims in this suit.

As a result, the cross-motions will be resolved in AAIC's favor. The Court need not consider AAIC's alternative argument that there is no coverage because any mental distress has to be accompanied by demonstrable physical injuries, which M.L.C. has allegedly not shown. That also renders moot the School District's motion seeking discovery on that point.

**V.   Conclusion**

AAIC's motion for summary judgment is granted. The School District's motion for declaratory judgment is denied.

The School District's motion to exceed the page limits is granted. Its motion for discovery is denied as moot. Its motion to file a sur-rebuttal is also denied as moot, since the proposed document is already filed as the rebuttal to its motion for declaratory judgment.

**SO ORDERED**, this the 13th day of June, 2013.

s/ Carlton W. Reeves _____
UNITED STATES DISTRICT JUDGE